The next case is BARTLETT v. ALAMEIDA. Thank you. BARBARA MICHELLE Thank you. Good afternoon. My name is Barbara Michelle. I'm appearing on behalf of Mr. William Bartlett. And thank you for the opportunity to be here today. KATHLEEN SULLIVAN We didn't seem to want to be here today. I don't understand. I never understand that. BARBARA MICHELLE I did a little more looking into the case, and I realized that I think this is a good thing. So here I am. I thought it would be helpful to the Court to go over some of the things that I don't think this case is about, just to clarify. First of all, this is not a case about actual knowledge versus the probability of knowledge. It's not a case about the Lambert standard of knowledge versus the Garcia standard of knowledge. It's not a case about Federal law versus State law. And I'm not looking for a new rule of law or for a new interpretation of existing law. I'm not looking for a rule that actual knowledge must always be proved in a registration case such as this. This is not so, therefore, Teague v. Lane is not involved in this case. I'm looking for a ruling from this Court that involves straight application of long-existing United States Supreme Court law. I just wanted to be clear about that. Pardon me. Because the judge told the jury that either knowledge or probability of knowledge didn't have to be proven. That is correct. The judge first instructed the jury that neither actual knowledge nor the probability of it need to be proved in this case. And then when the jury got really confused and hung after two days and came back and looked for instruction on, well, what does willful mean then, and the judge said, well, let me just make it straight. You don't need any kind of knowledge in this case. You can willfully admit to do something even if you don't know that you have a duty to do that. Well, that's what this case is about, exactly. The taking away from the jury of the right to determine every essential element of the offense. And since in 1957, Justice Douglas in the Lambert case held that knowledge, either actual knowledge or the probability of that knowledge, is an essential element of the offense of this kind of registration. Do you think the Lambert case in this case can be distinguished? No, I don't, Your Honor, because they are both, they both involve registration that is in the failure to register, which is a wholly passive offense, unaccompanied by any activity, and where mere presence in the city is the test of the offense. And in that sense, the cases, both Lambert and this case, are very, very similar, because all my client did was appear in the city. As opposed to cases, for example, which involve registration of guns or registration which involve firearms where there are allegations or restraining orders concerning violence towards other human beings. If I'm driving in Los Angeles and I'm a felon, what notice do I have of the fact that I have to go ahead and register? As contrasted, as contrasted to a sex offender who goes, who knows as a result of having reported the fact that he is a sex offender, I don't, the two don't seem to go together with me. Can you help me? Well, I hope I can, Your Honor. In my case, we had undisputed testimony from Mr. Bartlett that he followed the registration law for so long as he thought that he was required to follow it. And it's understandable when you consider the facts. He said, I believed that my duty to register as a sex offender was tied to my being on parole for that offense. And for so long as I was on parole, I registered. When the parole ended, nobody, when actually what he said was when the parole ended, I stopped seeing my parole officer because there was no duty, and the parole officer didn't, no longer advised me that I had to register. Now, you can leave. Can I ask a question? Oh, pardon me. Go ahead. I'm sorry. For what period? I don't seem to have the indictment anywhere here on this, the underlying case. What period was he charged with not registering for? Was it the period after he was last released from prison or before that? I don't have that in front of me, but I believe that the information charged failure to register in 88, 89. For a long period. For different periods of time. I'm sorry. All right. Let's check later. Okay. Yes. I believe that the information charged him with failure to register after he had last been released from prison. Which was in 97, I think, or 98. Okay. Now, if this is an AEDPA case and we would have to find that the court of appeals opinion was an unreasonable interpretation of Lambert, right? Either an unreasonable interpretation or the first one, contrary to what I believe. And I believe if – I'm sorry. I didn't mean to cut you off. No, that's fine. I'm actually seeing it as contrary to Lambert, which my reading of Lambert is that knowledge, actual or probable, is an essential element of the offense. Once you have such a holding, that means that – But what does it mean to say probable – to make probable knowledge an offense? I mean, how can somebody be held criminally liable for probably knowing something? It must have meant something else. I'm probably saying it wrong because – No, you're saying it right. That's the way the case says it, but I don't know what it means. Well, maybe I don't either, but what I think it means is that either the jury – it's a jury question. And the jury either has to find that the defendant actually knew about the duty or the jury has to say to itself, well, we can't prove – we can't show that – we don't – the DA didn't prove that he actually knew, but we think under all these circumstances that he probably knew. Well, probably beyond a reasonable doubt. Well, and then beyond a reasonable doubt, yes. Thank you. That's a very strange standard, but I think you're right that we don't need to worry about it because this jury was told neither of them. This jury was told neither of them. And so I believe that the – when the court of appeals said, well, we don't care that the jury wasn't told about knowledge because we look at the evidence and we find that undoubtedly that on the basis of all these notices, he must have known about the duty. And then the next thing – Well, if they found that – and my understanding of what the court of appeals said is that Lambert – that notice is good enough. Yes. And the California Supreme Court said a few months later the notice wasn't good enough. Well, not only the California Supreme Court. That's why I wanted to say in the beginning I'm not really basing my client's claim on what the California Supreme Court said. I'm basing it on Lambert. I'm basing it actually on Lambert and on a longstanding development of U.S. Supreme Court cases, I think the most recent one of which is Nader or Nieder, which says that in omission of – when you instruct the jury and you fail to instruct them as to an essential element of the offense, you have a big problem. And that's what we had in this case. May I address one other thing? Yes. The jury came back and requested some additional instruction. What was their inquiry? What was their concern? Why did they need additional instruction? The jury said, as I – I'm sorry. My notes are all over there. But I believe what the jury said was, Your Honor, we are confused over what willfully means. And so then the judge said, okay, I'll tell you. Willfully means you have to find that this man willfully failed to register. And you can find a willful omission. You can find a willful failure to act even without a knowledge of the duty to act. So it goes really to the very heart of the problem that we have. The jury wanted more instruction on this very issue. Absolutely. And then as soon as the judge said that, they said, thank you very much. They went back from the jury room and they came back with a guilty verdict. So I think that that is not only an unreasonable application of Federal law, but it's clearly contrary to both Lambert and the Nieder line of cases. Now, the district court here, and you have your – I don't have time, but I'll give you a minute to answer the question. The district court, as I read the opinion, did not really disagree with that aspect of your case, but said that there, as in Lambert, that there was no prejudice. So do you have a response to that? Well, my response, Your Honor, is that the prejudice is that the wrong entity judged my client guilty. It wasn't up to the district court, and it wasn't up to the court of appeal. It wasn't up to any justices anywhere to decide that the evidence consisting of these notices showed that my client had knowledge. That was up to the jury, and that element was taken away from the jury. That is the prejudice. And not only that, but given that his testimony explaining why he believed that that duty to register ended when his parole ended, given that it was undisputed and given that the jury hung on the question of knowledge, I think that you've got to your saying if we had to find it, if we had to find Brecht error, we would – there is Brecht error. Absolutely.  Thank you very much. Thank you. May it please the Court, Deputy Attorney General Karen Bissonnette for respondence. First, I disagree with counsel's characterization that there – that it is undisputed that Petitioner was not aware of the requirement of registration. No, no. That's not the question. I didn't understand you saying it was undisputed. It's undisputed that he made that – he said so many times and that the issue went to the jury. The fact that he claimed that he was unaware of it is something a prosecution certainly can't dispute if the only question is, does he admit that he was made aware of that? But the question is whether the jury was misinstructed. If the jury – I mean, I don't think there's any doubt that if the jury had been instructed that they had to find actual knowledge or even actual and probable knowledge, whatever probable knowledge means, and come back with a guilty verdict on this record, they probably would have succeeded. They probably would have been just fine, that they could have disbelieved his story that he didn't know, that he didn't read the material and was never told, and they could have said, well, you know, you signed this thing six times and you did register at one point and we don't believe you. That would have been fine. That's not the issue here. The issue here is that didn't happen because the jury was misinstructed. Now, do you agree that the jury was misinstructed? Yes, Your Honor. Under the laws that stood at the time of trial, the jury was correctly instructed. The trial court was following the law. What law? The State law. The cases that had been decided by the California Court of Appeal at that time had held that none of this was going to work. But that's not the question, is it? If the California Courts of Appeals were applying a standard contrary to the Supreme Court as enunciated in Lambert, then it doesn't really matter what the California Courts of Appeals were doing, does it? The instructions that the trial court gave I don't believe were improper under Lambert. Lambert does not require that. That's what we need to know. Why? Because Lambert does not require that the trial court instruct the jurors that as to each and every possible permutation of the registration requirement, that the prosecution must prove actual knowledge. And in this case, the only question was, did he know whether it was a lifetime requirement? But wasn't he told – weren't they told that actual knowledge and probable knowledge don't matter? Weren't they specifically told that? Is that wrong? Yes, they were, Your Honor. However, I don't know. So what do you mean by permutations? They were specifically told that it doesn't matter for any purpose. However, even if properly instructed that they must find actual knowledge, the question that the jurors apparently had wasn't really about whether or not he knew there was a requirement. It's clear he knew there was a requirement because he had registered in Las Vegas. Well, you say that, but please don't keep assuming. If that is a disputed fact, it had to go to a jury. So just to address it on that assumption. Now, the problem is that you keep giving us a permissible but not mandatory reading of this record when the issue before us is whether the jury was instructed such that it understood what it had to find. That's the issue we need to know. Okay? So why don't you go on with that question, with that issue? I believe the actual issue is whether or not it made any difference, ultimately. Because the district court assumed that there had been a violation, that the instructions were improper. Well, now, in order to get to that point, though, you guys show that it's harmless error. In view of that instruction that was given, that actual knowledge is not necessary, don't you then, to overcome that instruction, have to show that this was harmless? Yes, Your Honor. That's what's bothering me, is how you can show whether it's harmless when, in fact, they came back for additional instruction on the very point that we're concerned about, and shortly after that, they came in with a guilty verdict. They did, Your Honor. At that point, the jurors were hung ten to two, and they asked for further instruction on woefulness. And you're correct. The trial court wrongly instructed them that no actual knowledge was required, that only actual notice was required. However, the harmlessness of that is shown by the fact that the evidence here overwhelmingly demonstrated actual knowledge of the requirement. He had been notified on at least six separate occasions each time he had been paroled from prison. And he had a response to that, which was, I never read it. And the jury apparently was sufficiently concerned about that response that they came back and asked a question. Well, at least two of the jurors were. I agree with that, Your Honor. However, even had the jury been properly instructed that actual knowledge is a requirement, the trial court was not required to instruct them that the prosecution had to show that Petitioner knew that the requirement was a lifetime requirement. Well, why not? I find that very strange, because he had to know whether he had a register at the time he was accused of not having a register. His position was, I thought it only had to do with when I was on parole. So if he didn't know that he had a register when he wasn't on parole, then he didn't know he had a register. Petitioner admitted that he was aware of the fact that he had to register at least at one point because he was on parole, because he was a convicted sex offender. And the statute itself states, it's in the very opening sentence of the statute, that defendants who are required to register are required to register for the rest of their lives. All right. Let me ask you another question. What do you think the relevance of the Garcia case is to this one? I'm sorry? What is the relevance of the Garcia case to this one? I mean, on top of everything else, we now know that this statute under which he was convicted doesn't does require actual knowledge. That's correct, Your Honor. After the appeal in the case. Was his conviction final before the Garcia case came out? Final meaning that the time to apply for cert had run? I don't think so. I don't believe it was. I believe that the conviction became final June 21st of 2001, and Garcia came out, I believe, in May of that year. So no is the answer. The conviction was not final. That's correct. Yes. So I find it kind of amazing that the State didn't just say, okay, fine, let's do this over again. Really, it's kind of incredible, given the fact that the state just didn't confess error at that point, because you have you now have somebody who is convicted at around the same time of a crime that we know was mis-as to which the jury was misinformed under State law, right? Completely misinformed. And the conviction wasn't final yet. Are all those facts correct? Yes. All right. So. Yes. However, Garcia, in Garcia, the California Supreme Court expressly stated that it was imposing a higher level of due process requirement than that recovered, required by Lambert. And the issue here is whether the State courts misapplied Federal law. Federal law simply did not have this requirement. Lambert only requires proof of knowledge. Well, they said it was higher because it was because Lambert has probable or actual knowledge, and they were imposing actual knowledge. But here the jury was informed that neither probable nor actual knowledge was necessary. So here it was not a higher standard, right? In this case, the jury was informed in the manner in which the California Supreme Court understood Lambert, i.e., probable and actual knowledge. And then we were informed that neither of those mattered. That's correct. That is what's. So this conviction was inconsistent with the California Supreme Court's understanding of Lambert. Is that correct? Yes, Your Honor. And nonetheless, the State just let the thing go. I'm not arguing that. I'm sorry. I'm not arguing that it is not necessary to prove knowledge of the registration requirement. What I'm arguing about is what does that encompass? Does knowledge of the requirement mean I knew it was a lifetime requirement? I knew that I had to register it by a number of months? No. It means that he knew he had to register at the time he was accused of not registering. It means that, right? Yes. Okay. So when was he accused of not registering? At what time period was he accused of not registering? I believe the only period at which he could have been accused of that was after he was finally released from prison, because he's been in and out of prison during most of his time he has been in prison and was not required to register during the time he was in prison. Therefore, it was after his final release from prison that he did not register, that he claimed that he didn't know about the requirement and that he would have expected his parole officer to tell him, except for the fact that he never reported to his parole officer, and he was living under an assumed name. He was providing a false birth date, and even though he testified at trial that he could have registered even if he didn't want to report for parole, this is simply logically inconsistent, that he would he claims that he would register and report his address, and yet he would not report to the parole officer. So his own testimony on that point is completely inconsistent. It's not, as counsels argued, uncontested or indisputable. It's internally inconsistent, and the circumstances in this case show that he was quite aware of the registration requirement and that the reason he didn't register was not because he didn't think he had to, but because he didn't want to. He didn't want to be found and he didn't want to be sent back to prison. That's a very good argument for a jury. It's – it also goes to whether or not any of the arguments in this case, whether or not the error in this case was harmless, Your Honor. And in this case, it clearly was. All of the evidence, all of the credible evidence showed that he had been advised that the notice of registration requirement itself stated, this is a lifetime requirement. He signed each of these notices. He put his fingerprint on each of these notices. He acknowledged on cross-examination that he had received and signed these notices. It's clear that he was given the notice that's contemplated in Lambert and that was totally missing in Lambert. But Lambert isn't articulated as a notice case. I mean, I don't know what this probably means, but it's not articulated as a notice case, right? And it hasn't been read that way. And it wasn't read that way by the California Supreme Court. I believe that in Lambert, the Supreme Court stated that due process encompasses the concept of notice, that in order to hold people responsible for following or not following the law. But that wasn't a rule it ultimately – it ultimately announced. It announced a rule of actual or probable knowledge, whatever that is. And we would have had an interesting case here if they had been advised that you don't need actual knowledge and probable knowledge is good enough, but they weren't. They weren't advised that you don't need actual or probable knowledge. Your Honor, I believe that the way that this issue was raised in the State courts and raised below was that Federal due process requires actual knowledge. In this case, actual knowledge is clearly demonstrated. But wasn't the jury informed that they don't need either actual or probable knowledge? Wasn't that the instruction? Yes, Your Honor. The instructions – I'm not disputing that the instructions in this case were incorrect under Garcia, as Garcia was laying aside. No, but they were incorrect under any version of Lambert as well. Under any version of Lambert, even if you think that probable knowledge is a separate requirement. They were told neither actual nor probable knowledge is required here. No? They were told that, yes, Your Honor. That is correct. So they weren't only told that actual knowledge isn't required. They were told probable knowledge isn't required either. I'm certain they were told that actual knowledge is not required. I believe you're correct that they were also told that probable knowledge is not required. So therefore, I don't see – I don't understand the argument for how this could be consistent with Lambert. My argument is that in Lambert, the defendant claimed that she was entirely unaware of the statute. This was a Los Angeles municipal code. It was not a statewide statute. It required her to register within five days. The statute itself did not provide for notice. It also did not require willful violation. In this case, the statute does provide for notice, and Petitioner, in fact, received notice on many occasions. And it also requires a willful violation of the statute, which the jury was instructed they had to find. And, yes, the Court misinstructed them as to the meaning of willful in this context because the California Supreme Court later found that willfulness entailed knowledge of the registration requirement. However, Garcia didn't – again, in Garcia, the defendant claimed he was entirely unaware of the requirement that he register. And even though the court found that the jury was misinstructed in that case, it also found that the error was harmless, because the evidence that he was aware of the was overwhelming. And the same is true in this case, only it's even stronger in this case, because in this case he actually registered. He registered in Los Angeles. He also registered on one occasion in San Luis Obispo. It is clear he was made aware of the requirement. And whether he misunderstood whether it was a lifetime requirement or not, this is information he could easily have obtained. This is information that is contained in the very first sentence of the statute. It's contained in every notice of registration he was given. But that's notatory. Okay. Thank you very much, Ms. Besnett. I'll give you about one minute. Ms. Besnett. Just for the Court's reference, at page 41 of my excerpts of records, the judge instructed the jury, It is not an element of the offense that the convicted sex offender have actual or probable knowledge of the requirement. We know that. Thank you. Second of all, and Lambert makes reference to this, notice isn't always sufficient. Written notice is not sufficient if you're blind or if you're illiterate or if you have bad eyes or if your glasses need to be upgraded. This is why we require actual knowledge. And Mr. Hartlett was getting his actual knowledge from his parole officer who was telling him. The reason why Garcia was why the error in Garcia was harmless was because there was evidence that the notice was actually read to Mr. Garcia. It wasn't merely handed to him. And the judge required the jury to make a finding on that. Okay. Thank you very much. The case of Butler v. Alameda is submitted.
judges: Skopil, Noonan, Berzon